Receipt number AUSFCC-10481387

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| J. DOE 1-5, *on behalf of themselves and all others similarly situated,* <br><br> Plaintiffs, <br><br> v. <br><br> THE UNITED STATES, <br><br> Defendant. | Case No: 25-947 C <br><br> Judge: |

### CLASS ACTION COMPLAINT

Plaintiffs J. Doe 1-5,[1] on behalf of themselves and all others similarly situated, respectfully file this complaint seeking breach of contract damages from the United States. In support of this complaint, plaintiffs allege as follows:

### INTRODUCTION

1. This case concerns the Donald M. Payne Fellowship Program, which is a highly selective recruiting tool that the United States Agency for International Development (USAID) uses to induce elite college graduates from diverse ethnic and socioeconomic backgrounds into becoming USAID Foreign Service Officers. *See* 22 U.S.C. § 2736d.

2. USAID awarded Payne Fellowships to plaintiffs in 2023 and 2024.

3. Although plaintiffs could have pursued more lucrative degrees and employment opportunities, they accepted their Payne Fellowships because of their dedication to public service and reliance on USAID to honor its obligations under their Fellowships.

---

[1] Plaintiffs have filed a motion to proceed under pseudonyms with their complaint because the public release of their names presents a significant risk of harm.

4. Upon their selection as Payne Fellows, USAID and plaintiffs entered into contracts under which USAID agreed to pay plaintiffs $104,000 to offset their costs for obtaining graduate degrees in international development (or a similar degree) and completing two USAID-mandated summer internships.

5. In exchange for these payments, USAID required plaintiffs to forego more lucrative degrees, internships, and professional opportunities by serving for at least five years as USAID Foreign Service Officers after completing their graduate degrees and mandatory internships.

6. As relevant here, USAID could only terminate plaintiffs' contracts if they failed to comply with certain contractual obligations such as maintaining at least a 3.2 grade-point average (GPA), receiving a worldwide medical clearance, or obtaining a top-secret clearance.

7. Plaintiffs met all of their contractual obligations, including those related to GPA, medical clearances, and security clearances.

8. USAID was therefore contractually required to provide plaintiffs with their Payne Fellowship payments and employment as Foreign Service Officers.

9. Nevertheless, on February 26, 2025, USAID breached plaintiffs' contracts by terminating them for non-contractual reasons related to the Trump administration's dismantling of USAID.

10. USAID then abandoned plaintiffs by refusing to communicate with them about the logistical and financial impacts of the terminations, which include issues related to overdue tuition, suddenly necessary student loans, uncertain overseas internships, cancelled relocations, and unanticipated unemployment.

11. USAID's communication failures have unreasonably harmed plaintiffs' ability to seek alternative degrees, internships, and employment opportunities because they could not tell their schools or potential employers what, if any, obligations they still had to USAID.

12. Making matters worse, plaintiffs' ability to find new jobs has been harmed by their association with USAID because of the Trump administration's unsupported claims that USAID is a radical, evil, criminal, and lunatic-led organization that should die. [2]

13. USAID's unlawful termination of plaintiffs' contracts has caused them to suffer damages that include (a) unpaid tuition, stipends, and other payments, (b) lost wages and other benefits that plaintiffs would have received but for USAID's breach of their contracts, and (c) compensation for the economic opportunities that plaintiffs surrendered by financing and obtaining international development degrees and completing mandatory internships instead of pursuing other more lucrative opportunities.

**PARTIES**

14. J. Doe 1 is a member of the 2023 cohort of Payne Fellows who has not been able to find adequate alternative employment since the unlawful termination of his/her contract. *See* Ex. 1, J. Doe 1 contract.

15. J. Doe 2 is a member of the 2023 cohort of Payne Fellows who has not been able to find adequate alternative employment since the unlawful termination of his/her contract. *See* Ex. 2, J. Doe 2 contract.

16. J. Doe 3 is a member of the 2023 cohort of Payne Fellows who has not been able to find adequate alternative employment since the unlawful termination of his/her contract. *See* Ex. 3, J. Doe 3 contract.

17. J. Doe 4 is a member of the 2024 cohort of Payne Fellows who is preparing to start his/her

---

[2] *See, e.g., Does 1-26 v. Musk et al.*, No. CV 25-0462-TDC, 2025 WL 840574, at *5 (D. Md. Mar. 18, 2025) (describing the government's attacks on USAID); Axios, "Trump says USAID run by 'lunatics' as Dems demand answers on DOGE visit," Feb. 2, 2025, *available at* https://tinyurl.com/2y8f5wsn.

second year of graduate school, has not received required Payne Fellowship tuition and stipend payments, and has not found adequate alternative employment since the unlawful termination of his/her contract. *See* Ex. 4, J. Doe 4 contract.

18. J. Doe 5 is a member of the 2024 cohort of Payne Fellows who is preparing to start his/her second year of graduate school, has not received required Payne Fellowship tuition and stipend payments, and has not found adequate alternative employment since the unlawful termination of his/her contract. *See* Ex. 5, J. Doe 5 contract.

19. Defendant is the United States, acting through USAID.

## JURISDICTION

20. This Court possesses jurisdiction under 28 U.S.C. § 1491(a)(1) because plaintiffs seek damages related to USAID's breach of their money-mandating contracts.

## FACTUAL ALLEGATIONS

### I.     The Payne Fellowship Program

21. The Payne Fellowship Program is a highly selective two-year program that "seeks to attract outstanding individuals who are interested in pursuing careers in the Foreign Service of the U.S. Agency for International Development (USAID)." *See* https://apply.paynefellows.org (last visited June 4, 2025).

22. Under the Payne Fellowship Program, USAID awards up to 30 fellowships per year. *Id.*

23. Payne Fellowships provide recipients with $104,000 over the course of their two-year fellowships. *Id.*

24. Specifically, Payne Fellows receive "$24,000 per year toward tuition and mandatory fees for completion of a two-year master's degree at a U.S. institution; a $18,000 stipend for each

academic year for room, board, books and other education-related expenses; and up to $10,000 per year in stipend, housing, transportation, and related expenses for summer placement." *Id.*

25. By the end of their two-year fellowships, Payne Fellows are expected to have obtained a worldwide medical clearance, a top-secret security clearance, and "a degree in international development or another area of relevance to the work of the USAID Foreign Service at a U.S. graduate or professional school approved by the Payne Program." *Id.*

26. Payne Fellows must serve as USAID Foreign Service Officers for at least five years after their graduation. *Id.*

27. Howard University's Ralph J. Bunche International Affairs Center (RJB Center) helps USAID administer the Payne Fellowship Program.

## II. The 2023 Payne Fellowship contracts

28. In 2023, USAID awarded approximately 30 Payne Fellowships.

29. J. Doe 1-3 are members of this 2023 cohort.

30. The members of the 2023 Payne Fellowship cohort entered into identical Payne Fellowship contracts with USAID. *See* Ex. 1-3.

31. Under these contracts, USAID agreed to provide the 2023 Payne Fellows with the following compensation and benefits:

   a. "Provide, in accordance with Agency Policy, up to $24,000 per year per Fellow for actual expenses for tuition and fees during the first and second years of graduate school."

   b. "Provide the Fellow a stipend, up to a maximum of $18,000 per year, for each of two years of graduate study, while in school under the Payne Fellowship Program."

   c. "Provide the Fellow a stipend, housing, and one round trip ticket between the Fellow's residence (within the United States) and Washington, DC, for the Fellow's participation in a Congressional Internship arranged by Howard University's RJB Center during the summer before his/her first year of graduate study."

    d. "Provide the Fellow a stipend and one round trip ticket between the Fellow's residence and his/her overseas internship site as well as reimburse costs for medical evacuation insurance coverage, visa fees, inoculations and other travel-related expenses approved by the RJB Center and USAID while the Fellow serves abroad as an intern with the Agency during the summer following his/her first year of graduate school."

    e. "In addition, the Agency agrees, consistent [with the requirements for entry into the Foreign Service], to employ the Fellow, following successful completion of the Payne Fellowship Program, in a position with the Agency, as determined by the Agency in accordance with applicable Agency Policy."

Ex. 1 at 1-2.

32. In exchange for the above compensation and benefits, the 2023 Payne Fellows agreed to perform the following contractual requirements:

    a. "Complete successfully, and in a timely manner, the graduate program approved by the Agency and RJB Center."

    b. "Complete successfully a one-week orientation and a nine-week Congressional Internship (arranged by Howard University's RJB Center) during the summer before his/her first year of graduate study."

    c. "Attend mandatory professional development seminars, when offered, during the domestic internship and complete assignments as indicated. Provide, in writing, justification for planned absences from seminars and seek prior approval from the RJB Center for any such absence."

    d. "Complete successfully a 10-week overseas internship with the Agency during the summer following his/her first[-]year graduate study. The Fellow must have the required worldwide available medical, security and suitability clearances prior to beginning his/her overseas internship."

    e. "Accept an offer of employment, and serve in a position, with the Agency, upon successful completion of the Payne Fellowship Program, for a period of five years (two and one-half years of service for each year of education funded by the Agency)."

*Id.* at 2-3.

33. The 2023 Payne Fellow contracts included additional requirements related to the Fellow's educational obligations:

6

    a. "Maintain a full-time course load in the master's degree program for which he/she is enrolled (unless otherwise approved by the Agency and the RJB Center) so that graduation takes place in spring 2025."

    b. "Consult with the RJB Center, and obtain approval from the Agency and the RJB Center, prior to transferring to or taking courses at another institution or making other changes to his/her courses or academic program."

    c. "Maintain, for each individual semester of the master's degree program, a GPA of at least 3.2 on a 4.0 scale."

    d. "Provide the RJB Center with transcripts in a timely manner at the end of each semester."

*Id.* at 3.

34. The contracts further provided that the Fellows' "selection for, and continued participation in, the Payne Fellowship Program and subsequent entry into the Foreign Service is conditional upon obtaining and maintaining required clearances as specified by the Agency, including a top-secret clearance and worldwide available medical clearance. The Fellow may also be required to pass a drug test(s)." *Id.*

35. In addition, the contracts provided that USAID would discharge the Fellows from any financial liability to the government as long they satisfied their contractual obligations: "The Fellow understands that if he/she successfully completes all of the requirements of the Agreement, he/she will be completely discharged from all financial obligations incurred under the provisions of this Agreement." *Id.*

36. Importantly, the 2023 Payne Fellowship contracts do not include a termination for convenience provision.

37. Instead, the contracts only allow USAID to terminate them in two limited situations that are inapplicable here.

38. First, USAID could terminate a 2023 Payne Fellowship contract if a Fellow failed to comply with the terms of his/her contract:

> If he/she fails to comply with any of the terms of this Agreement, the Agency may, at its sole discretion, take steps that include the withholding of fellowship payments until the required information is received or the termination of the Fellow's participation in the Payne Fellowship Program. Resumption of fellowship payments may not be retroactive if the payment suspension is due to the failure to abide by designated deadlines.

*Id.* at 4.

39. Second, USAID could terminate a 2023 Payne Fellowship contract if, under certain circumstances, a Fellow failed to meet or maintain the contract's academic, medical, or security standards:

> If s/he voluntarily or because of misconduct, or any other reason, fails to meet or maintain the academic, medical, or security standards required by this contract or specified by USAID, and as a result, is disenrolled or fails to complete the educational and services requirements contained in this Agreement, Fellow may be terminated from the program.

*Id.*

40. Upon a contractually authorized termination, the contracts provide that USAID may require the repayment of Fellowship funds:

> In the event s/he is terminated from the program, fellowship payments will be terminated and s/he may be required to reimburse the United States government an amount of money, plus interest, that is equal to the total cost of the financial assistance paid by the United States Government in connection with the Fellow's participation in the Payne Fellowship Program from the commencement of this Agreement.

*Id.*

### III. The 2024 Payne Fellowship contracts

41. In 2024, USAID awarded approximately 30 Payne Fellowships.

42. J. Doe 4-5 are members of the 2024 Payne Fellowship cohort.

8

43. The members of the 2024 cohort entered into contracts with USAID that are virtually identical to the 2023 contracts. *Compare* Ex. 1-3 *with* Ex. 4-5.

44. Under these contracts, USAID agreed to provide the 2024 Payne Fellows with the following compensation and benefits:

   a. "Provide, in accordance with Agency Policy, up to $24,000 per year per Fellow for actual expenses for tuition and fees during the first and second years of graduate school."

   b. "Provide the Fellow a stipend, up to a maximum of $18,000 per year, for each of two years of graduate study, while in school under the Payne Fellowship Program."

   c. "Provide the Fellow a stipend, housing, and one round trip ticket between the Fellow's residence (within the United States) and Washington, DC, for the Fellow's participation in a Congressional Internship arranged by Howard University's RJB Center during the summer before his/her first year of graduate study."

   d. "Provide the Fellow a stipend and one round trip ticket between the Fellow's residence and his/her overseas internship site as well as reimburse costs for medical evacuation insurance coverage, visa fees, inoculations and other travel-related expenses approved by the RJB Center and USAID while the Fellow serves abroad as an intern with the Agency during the summer following his/her first year of graduate school."

   e. "In addition, the Agency agrees, consistent [with the requirements for entry into the Foreign Service], to employ the Fellow, following successful completion of the Payne Fellowship Program, in a position with the Agency, as determined by the Agency in accordance with applicable Agency Policy."

Ex. 4 at 1-2.

45. In exchange for the above compensation and benefits, the 2024 Payne Fellows agreed to perform the following contractual requirements:

   a. "Complete successfully, and in a timely manner, the graduate program approved by the Agency and RJB Center."

   b. "Complete successfully a one-week orientation and a nine-week Congressional Internship (arranged by Howard University's RJB Center) during the summer before his/her first year of graduate study."

   c. "Attend mandatory professional development seminars, when offered, during the domestic internship and complete assignments as indicated. Provide, in writing,

      justification for planned absences from seminars and seek prior approval from the RJB Center for any such absence."

d. "Complete successfully a 10-week overseas internship with the Agency during the summer following his/her first-year graduate study. The Fellow must have the required worldwide available medical, security and suitability clearances prior to beginning his/her overseas internship."

e. "Accept an offer of employment, and serve in a position, with the Agency, upon successful completion of the Payne Fellowship Program, for a period of five years (two and one-half years of service for each year of education funded by the Agency)."

*Id.* at 2-3.

46. The 2024 Payne Fellow contracts included additional requirements related to Fellow's educational obligations:

a. "Maintain a full-time course load in the master's degree program for which he/she is enrolled (unless otherwise approved by the Agency and the RJB Center) so that graduation takes place in [date]."[3]

b. "Consult with the RJB Center, and obtain approval from the Agency and the RJB Center, prior to transferring to or taking courses at another institution or making other changes to his/her courses or academic program."

c. "Maintain, for each individual semester of the master's degree program, a GPA of at least 3.2 on a 4.0 scale."

d. "Provide the RJB Center with transcripts in a timely manner at the end of each semester."

*Id.* at 3.

47. The contracts further provided that the Fellows' "selection for, and continued participation in, the Payne Fellowship Program and subsequent entry into the Foreign Service is conditional upon obtaining and maintaining required clearances as specified by the Agency, including a top-secret clearance and worldwide available medical clearance. The Fellow may also be required to pass a drug test(s)." *Id.*

---

[3] The use of "[date]" in this provision appears to be a typo.

48. In addition, the contracts provided that USAID would discharge the Fellows from any financial liability to the government as long they satisfied their contractual obligations: "The Fellow understands that if he/she successfully completes all of the requirements of the Agreement, he/she will be completely discharged from all financial obligations incurred under the provisions of this Agreement." *Id.*

49. Importantly, the 2024 Payne Fellowship contracts do not include a termination for convenience provision.

50. Instead, the contracts only allow USAID to terminate them in two limited situations that are inapplicable here.

51. First, USAID could terminate a 2024 Payne Fellowship contract if a Fellow failed to comply with the terms of his/her contract:

> If he/she fails to comply with any of the terms of this Agreement, the Agency may, at its sole discretion, take steps that include the withholding of fellowship payments until the required information is received or the termination of the Fellow's participation in the Payne Fellowship Program. Resumption of fellowship payments may not be retroactive if the payment suspension is due to the failure to abide by designated deadlines.

*Id.*

52. Second, USAID could terminate a 2024 Payne Fellowship contract if, under certain circumstances, a Fellow failed to meet or maintain the contract's academic, medical, or security standards:

> If s/he voluntarily or because of misconduct, or any other reason, fails to meet or maintain the academic, medical, or security standards required by this contract or specified by USAID, and as a result, is disenrolled or fails to complete the educational and services requirements contained in this Agreement, the Fellow may be terminated from the program.

*Id.* at 3-4.

53. Upon a contractually authorized termination, the contracts provide that USAID may require the repayment of Fellowship Funds:

> In the event s/he is terminated from the program, fellowship payments will be terminated and s/he may be required to reimburse the United States government an amount of money, plus interest, that is equal to the total cost of the financial assistance paid by the United States Government in connection with the Fellow's participation in the Payne Fellowship Program from the commencement of this Agreement.

*Id.* at 4.

### IV. USAID terminates the 2023 and 2024 Payne Fellowship contracts

54. On February 26, 2025, USAID terminated its contract with Howard University to administer the Payne Fellowship Program. *See* Ex. 6.

55. The termination letter to Howard University provided, in part, as follows:

> This award is being terminated for convenience and the interests of the U.S. Government pursuant to a directive from U.S. Secretary of State Marco Rubio, in his capacity as the Acting Administrator for [USAID] and/or Peter W. Marocco, who is performing the duties and functions of both Deputy Administrators for USAID.
>
> Secretary Rubio and PTDO Deputy Administrator Marocco have determined your award is not aligned with Agency priorities and made a determination that continuing this program is not in the national interest. The decision to terminate this individual award is a policy determination vested in the Acting Administrator and the person performing the duties and functions of the Deputy Administrator.

*Id.*

56. Although it issued a termination letter to Howard University, USAID did not formally notify plaintiffs about the termination of their Payne Fellowship contracts.

57. Instead, USAID refused to communicate with plaintiffs about the status of their contracts.

58. For example, in a February 28, 2025, email, Howard University told the Payne Fellows that USAID would not provide information about their contracts:

> Dear Payne Fellows,
>
> I am writing to you with a heavy heart to share some important information.
>
> We received notification on the evening of February 26 from USAID that the Payne Fellowship Program Award has been terminated as of February 26. I am attaching the letter we received for your awareness.
>
> We were very disappointed to receive this news. We have followed up with USAID, however, we currently do not have any information to share about your five-year service agreement contract with USAID, such as any repayment or other contractual obligations. We do not anticipate that information will be shared with us, but hopefully, it will be shared with you directly from USAID. We are also seeking guidance on who may be your point of contact at the agency which we will share with you. If you do hear from the agency directly, we would invite you to share the information with our team.
>
> FOR THE 2024 FELLOWS!
> Your first year of graduate school tuition and academic stipend has been paid by Howard University. However, USAID provided no information about your second year of graduate school (tuition, academic stipend, summer overseas placement) prior to this February 26th notification. Since we have been informed that we should not incur any new funding obligation, we cannot provide you with any funding beyond what has already been disbursed.

Ex. 7.

59. Weeks later, on March 12, 2025, Howard University confirmed that USAID was refusing to provide information about plaintiffs' terminated Payne Fellowship contracts:

> I wanted to provide you with a quick update. We finally received communication from USAID. I've asked several [times] if they will respond to previous questions about the award termination and whether USAID will communicate with Payne Fellows about their contract. I was informed that they are aware of the contracts and are working on the issue. We have not received any further communication.

Ex. 8.

60. USAID also ignored plaintiffs' requests for information about their contracts. These requests included emails to USAID and a letter to Secretary Rubio. *See, e.g.,* Ex. 9-10.

61. On April 23, 2025, a Senior Human Resources Advisor at USAID confirmed that USAID was not even trying to comply with its contractual obligations to the plaintiffs:

> Good morning, [redacted]. The response to your request [for information about your Payne Fellowship contract] was that at this time we have no information on any future programs. As the Agency is now undergoing a Reduction in Force (RIF), there is uncertainty as to any of the programs that were under USAID. Programs will be handled under the State Department, so my advice is to watch the job site for them and if they are going to establish or reconcile this program, it will be listed under the State Department. I hope this helps, even if the news is not good.

Ex. 11.

62. On May 16, 2025, plaintiffs and other Payne Fellows received unsigned email communications from an unknown sender at usaid@subscribe.usaid.gov. *See, e.g.,* Ex. 12-13.

63. In these unsigned emails, the unidentified sender used the passive voice to confirm that "someone" had terminated plaintiffs' contracts: "As you are aware, the Payne International Fellowship program was terminated on February 26, 2025." *Id.*

64. In addition, the unidentified sender told plaintiffs that "Secretary Rubio, performing the duties of USAID Administrator, has approved a recommendation to negate [your continued service agreement (CSA)] and related repayment obligation for the Payne Program." *Id.*

65. But plaintiffs do not have any repayment obligations because USAID—not plaintiffs—breached their contracts.

66. Perhaps recognizing this fact, USAID made its illusory repayment promise contingent on plaintiffs' agreement to waive their rights against USAID, which the unidentified sender claimed would occur if plaintiffs did not respond within five-business days:

> In consideration of this action, unless USAID receives an affirmative written objection via email to hr-helpdesk@usaid.gov within five business days of receipt of this notice, USAID deems that you have "no objection" to the above negation of the CSA and related repayment requirements, and in return, forever waive, and will not pursue through any judicial, administrative,

14

> or other process, any action against USAID or the United States government that is based on, arising from, or related to participation in the Payne Fellowship Program.

*Id.*

67. Plaintiffs objected to the email, did not agree to waive their rights, and note that USAID cannot enforce its coercive attempt to extract waivers via non-responses to an unsigned email of questionable origin.

68. Plaintiffs have not received their contractual payments and employment opportunities since at least February 26, 2025.

69. Although plaintiffs have not received termination notices, USAID's actions demonstrate that it has affirmatively or constructively terminated plaintiffs' contracts.

## CLASS ACTION ALLEGATIONS

70. Plaintiffs, on behalf of themselves and all others similarly situated, bring this action as a class action under Rule 23 of the Rules of the United States Court of Federal Claims (RCFC).

71. Plaintiffs seek to represent the following Proposed Class: all individuals who were awarded Payne Fellowship contracts in 2023 and 2024.

72. The Proposed Class—which consists of at least 60 geographically disbursed members who attended or are attending graduate schools throughout the country—is so numerous that joinder of all members is impracticable. *See* RCFC 23(a)(1).

73. The Proposed Class's claims involve common questions of law and fact that are capable of class-wide resolution. *See* RCFC 23(a)(2).

74. These common questions of law and fact include the following:

   a. Whether USAID breached the 2023 and 2024 Payne Fellowship contracts by failing to make required payments and provide required employment opportunities;

   b. Whether USAID breached the 2023 and 2024 Payne Fellowship contracts by

15

      unlawfully terminating them;

    c. Whether USAID is liable to the Class for its breach of the contracts; and

    d. Whether the Class is entitled to breach of contract damages.

75. Plaintiffs' claims are typical of the claims of the Proposed Class. *See* RCFC 23(a)(3).

76. For example, plaintiffs and the Proposed Class's claims arise from the same events (USAID's breach of the Payne Fellowship contracts), and each class member has suffered the same injury: breach damages. Proving plaintiffs' claims will prove the claims of the Proposed Class.

77. Plaintiffs will fairly and adequately protect the interests of the Proposed Class. *See* RCFC 23(a)(1).

78. Plaintiffs are aware of their obligations as class representatives and are willing and able to dedicate the time and effort necessary to pursue this matter on behalf of every member of the Proposed Class.

79. Plaintiffs' interests are not adverse to the other Class Members' interests.

80. Plaintiffs are represented by counsel who are competent and experienced in Tucker Act class actions and committed to zealously representing the Proposed Class.

81. The government has acted or refused to act on grounds that are generally applicable to the Proposed Class. *See* RCFC 23(b)(2).

82. The litigation of separate cases by individual Class Members would likely result in inconsistent or varying decisions.

83. The questions of law and fact that are common to the Class Members predominate over any questions affecting only individual members, including those related to liability and damages. *See* RCFC 23(b)(3).

84. A class action is superior to other methods for the fair and efficient resolution of this case:

a. Permitting this case to proceed as a class action will allow a large group of similarly situated Payne Fellows to litigate their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that would occur in separate individual actions.

b. Each member of the Proposed Class's damage claim is too small to make individual litigation an economically viable alternative, and few (if any) members have any interest in individually controlling the prosecution of separate actions.

c. No unusual difficulties are likely to be encountered in the management of this class action because all legal and factual claims are common to the Proposed Class.

## COUNT I
### (Breach of Contract)

85. Plaintiffs reallege and incorporate by reference all of the preceding allegations as if fully set forth herein.

86. Plaintiffs and USAID entered into binding Payne Fellowships contracts.

87. Plaintiffs satisfied their obligations under their Payne Fellowship contracts.

88. USAID breached plaintiffs' contracts by failing to provide contractually required payments and employment opportunities.

89. USAID also breached plaintiffs' contracts by terminating them in violation of their termination provisions.

90. USAID's breaches caused plaintiffs to suffer damages that include (a) unpaid tuition, stipends, and other payments, (b) lost wages and other benefits that plaintiffs would have received but for USAID's breach of their contracts, and (c) compensation for the economic opportunities that plaintiffs surrendered by financing and obtaining international development degrees and completing mandatory internships instead of pursuing other more lucrative opportunities.

91. Plaintiffs are entitled to damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

Plaintiffs respectfully request that the Court grant the following relief:

(a) Certify this lawsuit as a class action under RCFC 23;

(b) Designate plaintiffs as class representatives;

(c) Appoint undersigned counsel as Class Counsel for the Class;

(d) Award plaintiffs and the Class damages in an amount to be proven at trial;

(e) Award any allowable pre- and post-judgment interest;

(f) Award costs, reasonable attorney fees, and other disbursements as appropriate under 28 U.S.C. § 2412 or any other applicable law; and

(g) Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

*/s/Joshua D. Schnell*
Joshua D. Schnell*
Samuel Van Kopp
CORDATIS LLP
1011 Arlington Boulevard
Suite 375
Arlington, VA 22209
(202) 342-2550
jschnell@cordatislaw.com
svankopp@cordatislaw.com

Damien D. Brewster**
LEWIS & MCINTOSH, LLC
372 N. Lewis Road
Royersford, PA 19568
(484) 932-8900
damien@lmtlegal.com

* Counsel of Record
** Application for admission forthcoming

Dated: June 5, 2025                             *Counsel for Plaintiffs*