**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

|  |  |  |
|---|---|---|
| J. DOE NOS. 1-5, | ) | |
| | ) | |
| Plaintiff, | ) | No. 25-947 |
| | ) | |
| v. | ) | Judge Meyers |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**DEFENDANT'S MOTION TO DISMISS FOR LACK OF JURISDICTION, AND IN THE ALTERNATIVE, FOR FAILURE TO STATE A CLAIM**

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

CORINNE A. NIOSI
Assistant Director

Nelson Kuan
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480
Washington, DC  20044
Tel.:    (202) 307-0335
Nelson.Kuan@usdoj.gov

Of Counsel:
Rachel Cochran
U.S. Agency for International Development

December 19, 2025                                    Attorneys for Defendant

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

QUESTIONS PRESENTED ................................................................................................ 2

BACKGROUND .................................................................................................................. 3

ARGUMENT ........................................................................................................................ 5

I.     Standard of Review ................................................................................................... 5

II.    The Court Should Dismiss the Complaint for Lack of Jurisdiction Because the
Participation Agreements Could Not Fairly Be Interpreted as Contemplating Money
Damages from the United States in the Event of Breach .............................................. 6

III.   In the Alternative, the Court Should Dismiss the Complaint for Failure to State a
Claim ........................................................................................................................ 9

    A.  The Complaint Fails to Plead the Existence of a Valid Contract with the United States
      9

    B.  The Complaint Fails to State a Claim for Breach of Any "Contractually Required"
      Duty ...................................................................................................................... 10

    C.  The Complaint Fails to State a Claim for Breach of Any Termination Provisions ..... 12

    D.  The Complaint Fails to State a Claim for Damages Based on Lost Wages or Economic
      Opportunities ....................................................................................................... 13

CONCLUSION ................................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

Cases

*Anderson v. United States*,
  85 Fed. Cl. 532 (2009) .................................................................................................. 6

*Anderson v. United States*,
  344 F.3d 1343 (Fed. Cir. 2003) ................................................................................. 9, 10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..................................................................................................... 6

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..................................................................................................... 6

*Bell/Heery v. United States*,
  739 F.3d 1324 (Fed. Cir. 2014) .................................................................................... 10

*Boaz Housing Authority v. United States*,
  994 F.3d 1359 (Fed. Cir. 2021) ..................................................................................... 9

*Cambridge v. United States*,
  558 F.3d 1331 (Fed. Cir. 2009) ..................................................................................... 3

*Giesecke+Devrient GMBH v. United States*,
  150 Fed. Cl. 330 (2020) ................................................................................................ 6

*Hamlet v. United States*,
  63 F.3d 1097 (Fed. Cir. 1995) ...................................................................................... 13

*Kam-Almaz v. United States*,
  682 F.3d 1364 (Fed. Cir. 2012) .................................................................................. 5, 6

*Lion Raisins, Inc. v. United States*,
  54 Fed. Cl. 427 (2002) .................................................................................................. 9

*Papasan v. Allain*,
  478 U.S. 265 (1986) .................................................................................................... 13

*Rumsfeld v. Freedom NY, Inc.*,
  329 F.3d 1320 (Fed. Cir. 2003) .................................................................................... 14

*Shoshone Indian Tribe of Wind River Rsrv. v. United States*,
  672 F.3d 1021 (Fed. Cir. 2012) ..................................................................................... 5

*Trusted Integration, Inc. v. United States*,
  659 F.3d 1159 (Fed. Cir. 2011) ................................................................................ 5

*United States v. King*,
  395 U.S. 1 (1969) .................................................................................................... 6

Statutes

5 U.S.C. § 4108(a)(2) .............................................................................................. 8

22 U.S.C. § 2736d .................................................................................................. 3

28 U.S.C. § 1491(a)(l) ............................................................................................ 6

Rules

RCFC 12(b)(1) ........................................................................................................ 5

RCFC 12(b)(6) .................................................................................................. 5, 15

RCFC 12(h)(3) ........................................................................................................ 5

Other Authorities

90 FR 8619 ........................................................................................................ 4, 12

# EXHIBIT

| Exhibit | Date | Description |
|---------|------|-------------|
| A | Oct. 16, 2024 | ADS Chapter 414, Foreign Service (FS) Appointments, U.S. Agency for International Development. |

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| J. DOE NOS. 1-5, ) | |
| ) | |
| Plaintiffs, ) | No. 25-947 |
| ) | |
| v. ) | Judge Meyers |
| ) | |
| THE UNITED STATES, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

**<u>DEFENDANT'S MOTION TO DISMISS FOR LACK OF JURISDICTION, AND IN THE ALTERNATIVE, FOR FAILURE TO STATE A CLAIM</u>**

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC) and this Court's December 1, 2025, Order, ECF 28, defendant submits this motion to dismiss the complaint filed by plaintiffs, J. Doe 1-5.  For the reasons set forth below, we respectfully request that the Court dismiss the complaint.

**<u>INTRODUCTION</u>**

The Payne Fellowship participation agreements on which plaintiffs have filed suit explicitly stated that the fellow "underst[ood] that the conditions and obligations contained in this Agreement [we]re in addition to those generally applicable to employment" in the United States Agency for International Development (USAID) and that his or her "selection and continued participation in the Payne Fellowship Program [we]re subject to all requirements of [USAID] employment established by statute, regulation, or policy, . . . each of which is subject to change."  Thus, the fellows were expressly on notice that there was no guarantee of employment.  And USAID's employment requirements indeed have changed.

USAID has been reorganized pursuant to a presidential order.  USAID "personnel

1

globally have been subject to a consolidated Reduction-In-Force (RIF) action."  The Payne Fellowship program through which USAID recruited some candidates for foreign service was therefore no longer consistent with the policy surrounding USAID.  USAID terminated its cooperative agreement with Howard University, which administered the Payne Fellowship program and disbursed fellowship payments to the fellows.  USAID also released the fellows from their service commitments and conditional repayment obligations for the tuition and stipend they had already received.  In concrete terms, each plaintiff thus received a benefit for at least one year of tuition and stipend without any service and repayment obligations.  Plaintiffs were never entitled to any monetary payments under the participation agreements they signed before entering the fellowship program.

The Court should dismiss the complaint for lack of jurisdiction because the complaint fails to show that the participation agreements -- which involved highly contingent opportunities to be considered for employment -- signed by the fellows could fairly be interpreted as contemplating money damages from the United States in the event of breach.

In the alternative, the Court should dismiss the complaint for failure to state a claim because the complaint has failed to plead sufficient facts supporting the existence of a valid contract between each of the plaintiffs and the United States.  The complaint has also failed to allege sufficient facts supporting any inference that USAID breached any obligation or duty arising out of the participation agreements signed by plaintiffs.  Finally, the complaint has failed to allege sufficient facts supporting any claim for lost wages or economic opportunities.

## QUESTIONS PRESENTED

1.       Whether the complaint has alleged sufficient facts to show that plaintiffs have agreements with defendant that could fairly be interpreted as contemplating monetary damages from the defendant in the event of a breach.

2

2.      Whether the complaint has adequately stated any claim for relief.

**BACKGROUND**[1]

In 2023 and 2024, plaintiffs were awarded fellowship opportunities in USAID's Payne Program, which was authorized by statute to "to attract outstanding students with an interest in pursuing a Foreign Service career who represent diverse ethnic and socioeconomic backgrounds."  22 U.S.C. § 2736d; Compl. ¶¶ 1, 2. The fellowship program was administered by Howard University pursuant to a 2021 cooperative agreement between Howard University and USAID.  *See* Compl. ¶ 27; ECF 1-3 at 2.[2]  Under the cooperative agreement, USAID paid the program costs to Howard University, and Howard University then disbursed fellowship payments to the individual fellows.  *See* ECF 1-3 at 2, 4 (addressing 2024 fellows' "first year of graduate school tuition and academic stipend ha[d] been paid by Howard University," and Howard University "cannot provide [the 2024 fellows] with any funding beyond what ha[d] already been disbursed").

In keeping with the statute, USAID required each individual fellow to sign an agreement (the participation agreement) committing to serve "two and one-half years of service for each year of education funded by the Agency."  ECF 1-2 at 2.[3]  A fellow "<u>may be required to repay the United States government the amount of money, plus interest, that is equal to the total cost of</u>

---

[1] Factual allegations in the complaint are recited here for the limited purpose of this motion. *See Cambridge v. United States*, 558 F.3d 1331, 1335 (Fed. Cir. 2009) (explaining that the Court, in resolving a motion under Rule 12(b)(6), should assume all well-pleaded allegations are true).  By this motion, USAID does not admit, or otherwise concede the validity of, any of these alleged facts.

[2] Award data is available at https://www.usaspending.gov/award/ASST_NON_7200AA21CA00016_7200.

[3] Exhibits 1 through 5 of the complaint contain the five agreements for the plaintiffs' participation in the Payne Fellowship program.  The five agreements are identical in their material terms for the purposes of this motion, and the motion may cite to only the first agreement in Exhibit 1 to the complaint or to all five agreements as appropriate.

the financial assistance paid by the United States Government in connection with the Fellow's education from the commencement of this Agreement," *id*. at 2 (emphasis in original), unless he or she completed the service commitment and would therefore be "discharged from all financial obligations incurred under the provisions of this Agreement," *id*. at 4. Each agreement explicitly stated that "the conditions and obligations contained in this Agreement [we]re in addition to those generally applicable to employment in the Agency." *Id*. at 2. Moreover, the fellow's "selection and continued participation in the Payne Fellowship Program [we]re subject to all requirements of Agency employment established by statute, regulation, or policy, . . . each of which is subject to change." *Id*. at 2.

USAID's employment policies did change. On January 20, 2025, the President ordered a comprehensive review of USAID's programs. *See* Reevaluating and Realigning United States Foreign Aid, 90 FR 8619 ("Reviews of each foreign assistance program shall be ordered by the responsible department and agency heads under guidelines provided by the Secretary of State, in consultation with the Director of OMB."). Pursuant to the policy review ordered by the President, USAID's functions and programs were eliminated or transferred. *See* ECF 1-3 at 10 (discussing "State Department's decision to assume responsibility for USAID's functions and programs"). Accordingly, USAID "personnel globally have been subject to a consolidated Reduction-In-Force (RIF) action." *Id*. at 15, 18. Consistent with the change in policy surrounding USAID, USAID terminated its cooperative agreement with Howard University on February 26, 2025. *Id*. at 2. On May 16, 2025, USAID confirmed that "given the impossibility of continued USAID service," USAID released all the fellows "from the service agreement: no repayment is required, and [the fellows] have no further service obligations with the U.S. Government as a result of [their] participation in the Payne Fellowship program." *Id*. at 15, 18.

This litigation ensued, with five former Payne fellows from the 2023 and 2024 cohorts seeking to recover in a putative class action the second year fellowship payments for the 2024 fellows as well as for all plaintiffs, (1) "lost wages and other benefits that plaintiffs would have received," and (2) "compensation for the economic opportunities that plaintiffs surrendered by financing and obtaining international development degrees and completing mandatory internships instead of pursuing other more lucrative opportunities." Compl. ¶¶ 84, 90.

## ARGUMENT

### I.    Standard of Review

Rule 12(b)(1) provides that "a party may assert . . . by motion" the defense of "lack of subject-matter jurisdiction." RCFC 12(b)(1). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." RCFC 12(h)(3).

To determine jurisdiction, the "court must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011). The plaintiff has the burden of establishing jurisdiction by a preponderance of the evidence. *Id.* When a plaintiff's jurisdictional facts are challenged, only those factual allegations that the defendant does not controvert are accepted as true. *Shoshone Indian Tribe of Wind River Rsrv. v. United States*, 672 F.3d 1021, 1030 (Fed. Cir. 2012). The Court is not "restricted to the face of the pleadings" in resolving disputed jurisdictional facts and may review evidence outside the pleadings. *Id.* (citations omitted).

To avoid dismissal for failure to state a claim under RCFC 12(b)(6), "a complaint must allege facts 'plausibly suggesting (not merely consistent with)' a showing of entitlement to relief." *Kam-Almaz v. United States*, 682 F.3d 1364, 1367 (Fed. Cir. 2012) (citations omitted). "The facts as alleged 'must be enough to raise a right to relief above the speculative level, on the

assumption that all the allegations in the complaint are true (even if doubtful in fact).'" *Id*. at 1367-68 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "[A] court is 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Kam-Almaz*, 682 F.3d at 1368 (quoting *Twombly*, 550 U.S. at 555).

**II.     The Court Should Dismiss the Complaint for Lack of Jurisdiction Because the Participation Agreements Could Not Fairly Be Interpreted as Contemplating Money Damages from the United States in the Event of Breach**

The jurisdiction of the United States Court of Federal Claims is limited. *Giesecke+Devrient GMBH v. United States*, 150 Fed. Cl. 330, 342 (2020) ("The jurisdiction of the Court of Federal Claims is even more limited than that of other federal district courts.  In *United States v. King*, the Supreme Court emphasized this Court's jurisdiction extends only as far as the government consents to be sued.") (citing *United States v. King*, 395 U.S. 1, 4 (1969)). The Tucker Act grants this Court "jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."  28 U.S.C. § 1491(a)(l).  "The Tucker Act provides the waiver of sovereign immunity necessary to sue the United States for money damages, but the plaintiff must establish an independent substantive right to money damages from the United States, that is, a money-mandating source within a contract, regulation, statute, or constitutional provision itself, in order for the case to proceed."  *Anderson v. United States*, 85 Fed. Cl. 532, 536 (2009).

As discussed in the background section, USAID entered into a cooperative agreement with Howard University in 2021 to fund the fellowship program.  *See* ECF 1-3 at 2.  Howard

University then disbursed fellowship payments to the fellows. *See id*. at 4 (addressing 2024 fellows that their "first year of graduate school tuition and academic stipend ha[d] been paid by Howard University," and Howard University "cannot provide [the 2024 fellows] with any funding beyond what ha[d] already been disbursed"). Because USAID did not disburse or otherwise obligate any funds under the participation agreements, the language mentioning that USAID was to provide "through the Howard University RJB Center" certain payments to the fellows were mere recitals for context. *See* ECF 1-2 at 2, 8, 14, 20, 27.

In each of the participation agreements, the respective fellow signed the agreement in either January or February of 2023 or 2024. *See* Compl. ¶ 14; ECF 1-2 at 6 (signing the agreement on February 17, 2023, by a member of the 2023 cohort). Howard University disbursed the initial funds to the fellows soon after the fellows signed their agreements but well before USAID even signing them. *Compare, e.g.*, ECF 1-2 at 2 (describing stipend for "the summer before his/her first year of graduate study"), *with id*. at 6 (showing USAID signed on December 21, 2023). Whether and when USAID signed the participation agreements had no bearing on Howard University's disbursement of the fellowship payments to the fellows. Where the participation agreements were signed by USAID at all, they were each signed by an "Acting FSC Director." Consistent with Exhibits 12 and 13 to the complaint, the "Acting FSC Director" was an official within USAID's Office of Human Capital and Talent Management. *See* ECF 1-3 at 15, 18. An "FSC Director" was:

> responsible for approving new FS appointments for career and non-career applicants and directing employees in administering all processes related to the appointment of employees covered by this ADS chapter. This includes:
>
> 1.    Advising Bureaus and Independent Offices (B/IOs) on the appropriate appointment type to meet identified needs;

2.        Approving new positions to be filled as FSL in line with established ceilings and OU allocations; and

3.        Making decisions on the termination of time-limited non-career appointments

§ 414.2.d, Automated Directives System, USAID (attached as Exhibit A; *formerly avail.* at usaid.gov). The participation agreements were therefore not signed by a government representative having actual authority to bind the United States in a contract that would mandate the payment of money in the event of breach. Indeed, the complaint recognizes the nature of the participation agreements as a "[continued service agreement (CSA)] . . . for the Payne Program." Compl. ¶ 64 (brackets in original); *also id.* ¶ 58 (quoting ECF 1-3 at 18). These participation agreements were not contracts mandating payments of money from the government nor were they intended as such. *Cf.* 5 U.S.C. § 4108(a)(2) (discussing reimbursement of training cost to the government in lieu of continued service).

Accordingly, the agreements could not fairly be interpreted as contemplating money damages from the United States in the event of breach. The participation agreements contemplated reimbursement by the fellows to the United States in case the fellows were terminated from the fellowship program. *See* ECF 1-2 at 4-5. In contrast, the participation agreements specified that continued participation in the fellowship program was "subject to all requirements of Agency employment established by statute, regulation, or policy, including as specified in the 3 FAM 4130, Standards for Appointment and Employment . . . , each of which is subject to change." ECF 1-2 at 2, 8, 14, 20, 27. Because USAID had discretion to discontinue participation in the fellowship program based on its employment requirements, the participation agreements were silent on any money damages available from the United States in contrast to the fellows' obligation to reimburse the United States. This asymmetry in the remedy mirrors a

8

parallel and opposite asymmetry in USAID's funding through Howard University of the academic pursuits of the fellows during the fellowship program.  *See, e.g.,* ECF 1-2 at 2.  The specific omission of money damages from the United States in the participation agreements therefore supplanted "the general rule that most contracts contain implied rather than express provisions specifying the basis for an award of damages in case of breach."  *See Boaz Housing Authority v. United States*, 994 F.3d 1359, 1365 (Fed. Cir. 2021).

III.    **In the Alternative, the Court Should Dismiss the Complaint for Failure to State a Claim**

   A. **The Complaint Fails to Plead the Existence of a Valid Contract with the United States**

   To support the existence of a valid contract with the United States, a plaintiff must allege: "(1) mutuality of intent to contract; (2) lack of ambiguity in offer and acceptance; (3) consideration; and (4) a government representative having actual authority to bind the United States in contract." *Anderson v. United States*, 344 F.3d 1343, 1353 (Fed. Cir. 2003); *Lion Raisins, Inc. v. United States*, 54 Fed. Cl. 427, 431 (2002) ("To plead a contract claim, whether express or implied, within Tucker Act jurisdiction, a complainant must allege mutual intent to contract including an offer, an acceptance, consideration and facts sufficient to establish that the contract was entered into with an authorized agent of the United States who had actual authority to bind the United States.") (quotations omitted).

   Without alleging sufficient facts to support the existence of each of the four contract elements, the complaint merely asserts in conclusory fashion that the five participation agreements in the complaint's exhibits were contracts.  Compl. ¶¶ 14-18 (asserting "unlawful termination of [each plaintiff's] contract").  As discussed above in Section II, the participation agreements were each signed by an "Acting FSC Director."  Consistent with Exhibits 12 and 13 to the complaint, the "Acting FSC Director" was an official within USAID's Office of Human

Capital and Talent Management. *See* ECF 1-3 at 15, 18. The complaint has failed to allege any facts showing that the participation agreements were signed by a government representative having actual authority to bind the United States in contract. *See Anderson*, 344 F.3d at 1353. Accordingly, the complaint fails to plead sufficient facts showing the existence of a valid contract between the plaintiffs and the United States.

### B. The Complaint Fails to State a Claim for Breach of Any "Contractually Required" Duty

To properly state a claim for breach of contract, plaintiff must: (1) identify "an obligation or duty arising out of the contract" and (2) provide "factual allegations sufficient to support the conclusion that there has been a breach of the identified contractual duty." *Bell/Heery v. United States*, 739 F.3d 1324, 1330 (Fed. Cir. 2014). As discussed above, the participation agreements were not contracts with the government. Even if the participation agreements were considered binding contracts, which we do not concede, the complaint has failed to allege sufficient facts showing there was any obligation or duty arising out of the participation agreements for USAID "to provide plaintiffs with their Payne Fellowship payments and employment as Foreign Service Officers." *Contra* Compl. ¶ 8.

As discussed in the background section, well before the participation agreements at issue were signed, USAID entered into a cooperative agreement with Howard University to provide funding to Howard University supporting Howard University's administration of the fellowship program. The participation agreements mention of USAID providing "through the Howard University RJB Center" certain payments to the fellows were therefore mere recitals for context. ECF 1-2 at 2, 8, 14, 20, 27. Those recitals in plaintiffs' participation agreements did not create a separate contractual duty for USAID to make such payments directly to the fellows. The complaint's allegations of failure by Does 4 and 5 to receive the tuitions and stipends for the

10

2025-26 school year have therefore failed to state a claim that USAID breached any contractual duty arising out of the participation agreements signed by those plaintiffs. *See* Compl. ¶¶ 17, 18, 68.

Likewise, the participation agreements did not create an unqualified duty for USAID to provide plaintiffs with "employment as Foreign Service Officers." Rather, conditioned upon USAID's policy and discretion, the agreements merely recited that:

> [T]he Agency agree[d], consistent with the terms set forth in footnote 3 below and elsewhere in this Agreement, to employ the Fellow, following successful completion of the Payne Fellowship Program, in a position with the Agency, as determined by the Agency in accordance with applicable Agency policy.

ECF 1-2 at 3, 9, 15, 21, 28. As noted in Section II above, the participation agreements specified that continued participation in the fellowship program was "subject to all requirements of Agency employment established by statute, regulation, or policy . . . , each of which is subject to change." ECF 1-2 at 2, 8, 14, 20, 27. As USAID was being dismantled, it terminated the fellowship program and discontinued the participation agreements by May 16, 2025 "given the impossibility of continued USAID service[.]" ECF 1-3 at 15, 18.

The purported contractual requirement was nothing more than plaintiffs turning the necessary conditions for continued participation in the fellowship program and future consideration for foreign service into sufficient conditions for payments and employment. *See* Compl. ¶¶ 7-8 ("Plaintiffs met all of their contractual obligations, including those related to GPA, medical clearances, and security clearances. USAID was therefore contractually required to provide plaintiffs with their Payne Fellowship payments and employment as Foreign Service Officers."). The complaint, however, overlooks the basic purpose of the participation agreements in memorializing a recruiting arrangement "subject to change" in USAID's employment requirements established by statute, regulation or policy. ECF 1-2 at 2, 8, 14, 20,

11

27.  By failing to allege sufficient facts addressing the basic purpose of the participation agreements, the complaint has failed to state a claim for breach of any obligation or duty arising out of the participation agreements.  *Contra* Compl. ¶ 8.

**C.  The Complaint Fails to State a Claim for Breach of Any Termination Provisions**

As discussed in the background section, the Payne Fellowship program cooperative agreement between USAID and Howard University was terminated on February 26, 2025, pursuant to its terms.  *See* ECF 1-3 at 2.  Moreover, each individual fellow's continued participation in the fellowship program was "subject to all requirements of Agency employment established by statute, regulation, or policy," which were expressly subject to change.  ECF 1-2 at 2, 8, 14, 20, 27.

In accordance with changes in "requirements of Agency employment," *id*., USAID discontinued the participation agreements to conform to the changes in the agency's policy.  *See* 90 FR 8619.  Specifically, exhibits 12 and 13 to the complaint show that on May 16, 2025, USAID informed the 2023 and 2024 fellows, respectively, of the termination of the fellowship program and the changes in USAID's employment policy.  ECF 1-3 at 15 (informing fellows that "Agency personnel globally have been subject to a consolidated Reduction-In-Force (RIF) action" and of "the impossibility of continued USAID service and the related repayment requirements").  Accordingly, USAID released each of the fellows from their "service agreement[.]"  *Id*. at 15 ("Therefore, you are released from the service agreement: no repayment is required, and you have no further service obligations with the U.S. Government as a result of your participation in the Payne Fellowship program."); *id*. at 18 (same).  USAID thus explicitly discontinued the participation agreements by May 16, 2025.

The complaint's assertions that the participation agreement the "d[id] not include a termination for convenience provision" and allowed "USAID to terminate them in two limited

12

situations that are inapplicable here" are legal conclusions that should not be accepted as true upon a motion to dismiss. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986) (Courts "are not bound to accept as true a legal conclusion couched as a factual allegation."). Moreover, the complaint's legal conclusions overlook the language in the second paragraph of participation agreements stating that "continued participation in the Payne Fellowship Program [was] subject to all requirements of Agency employment established by statute, regulation, or policy . . . , each of which [wa]s subject to change." ECF 1-2 at 2, 8, 14, 20, 27. The complaint therefore fails to state a claim that USAID "breached plaintiffs' contracts by terminating them in violation of their termination provisions." *See* Compl. ¶ 89.

### D. The Complaint Fails to State a Claim for Damages Based on Lost Wages or Economic Opportunities

The complaint cites no provision in the participation agreements entitling plaintiffs to any wages if plaintiffs were to be appointed as foreign service officers. Nor can the participation agreements provide such a contractual obligation because any eventual employment as foreign service officers would be pursuant to appointments not contracts. *See Hamlet v. United States*, 63 F.3d 1097, 1101 (Fed. Cir. 1995) ("This court has stated that there is a well-established principle that, absent specific legislation, federal employees derive the benefits and emoluments of their positions from appointment rather than from any contractual or quasi-contractual relationship with the government.") (quotations omitted). Indeed, the participation agreements specified that any eventual employment by USAID through the fellowship program would be by appointment. ECF 1-2 at 3, 9, 15, 21, 28 n.3 (addressing "Career Candidate Foreign Service Appointment into the Foreign Service through the Payne Fellowship Program"); *see also id*. at 2, 8, 14, 20, 27 (citing 3 FAM 4130, Standards for Appointment and Continued Employment).

Even if plaintiffs were to be appointed as foreign service officers by USAID, plaintiffs

13

would be subject to any agency-wide employment policies, including reporting for duty during the time periods for which any wages were to be paid, before any wages were to be paid. Accordingly, such wages would not have accrued out of the participation agreements itself, "as direct and immediate results of its fulfillment[.]" *See Rumsfeld v. Freedom NY, Inc.*, 329 F.3d 1320, 1333 (Fed. Cir. 2003). Claiming damages for such lost wages would be effectively seeking lost profits from other independent and collateral undertakings that are too remote and uncertain to be recoverable. *See id.* (affirming denial of claim for profits "such as would have been realized from other independent and collateral undertakings, although entered into in consequence and on the faith of the principal contract" as too remote and uncertain to be recoverable).

Underscoring the speculative nature of plaintiffs' lost wages claims, if they were to be appointed as foreign service officers by USAID, they would have been subjected to USAID's "consolidated Reduction-In-Force (RIF) action" of its personnel globally. *See* ECF 1-3 at 15, 18. And plaintiffs would not have earned their wages from USAID at any rate. Even further afield, plaintiffs request damages "for the economic opportunities that plaintiffs surrendered by financing and obtaining international development degrees and completing mandatory internships instead of pursuing other more lucrative opportunities." Compl. ¶ 13. Such lost "economic opportunities" are again too remote and uncertain to be recoverable. *See Freedom NY*, 329 F.3d at 1333.

Plaintiffs' damages theory is based on the supposition that they would have eventually met all the requirements for employment or maintain those requirements for any definite period of time. This damages theory also assumes that USAID's needs would require plaintiffs' employment. The possibility that plaintiffs would be employed by USAID was remote and

14

speculative.  And the notion that they are entitled to the earnings they could have made with other organizations or companies is even more remote and speculative.  Accordingly, these claims for lost wages and economic opportunities should be dismissed under RCFC 12(b)(6).

## CONCLUSION

For the reasons stated above, we respectfully request that the Court dismiss plaintiffs' complaint for lack of jurisdiction and, in the alternative, failure to state a claim.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s *Corinne A. Niosi*
CORINNE A. NIOSI
Assistant Director

Of Counsel:                                              /s *Nelson Kuan*
Rachel Cochran                                        Nelson Kuan
U.S. Agency for International Development    Trial Attorney
                                                                Commercial Litigation Branch
                                                                Civil Division
                                                                U.S. Department of Justice
                                                                P.O. Box 480
                                                                Washington, DC  20044
                                                                Tel.:   (202) 307-0335
                                                                Nelson.Kuan@usdoj.gov

December 19, 2025                                  Attorneys for Defendant

15